**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-01829-STV

CHRISTOPHER TALMADGE,

      Plaintiff,

v.

JOSHUA MARNER,
CLINTON BURNETT,
MATT SYCHLA,
GEOFF REEVES,
SGT. PATRICK MUSSELMAN,
LOVELAND POLICE DEPARTMENT, and
CITY OF LOVELAND

      Defendants.

_____

**ORDER**
_____

Entered by Magistrate Judge Scott T. Varholak

      This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion"). [#21] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##31, 32] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED**.

I.    **BACKGROUND**[1]

This action arises out of an encounter between Plaintiff and officers from the City of Loveland's Police Department.  [*See generally* #5]  On July 6, 2019, Plaintiff was at his home in Loveland, Colorado.  [*Id.* at ¶ 10]  Due to an incident earlier that day between Plaintiff's fiancée, Dorothy Padgett, and his roommate, Matthew Powell, Plaintiff told Mr. Powell that he needed to move out of the house.  [*Id.* at ¶¶ 10-11]  Mr. Powell refused and instead called 911, telling the 911 operator that Plaintiff was going to harm himself, Mr. Powell, and others.  [*Id.* at ¶¶ 11-12]

In response, Officer Joshua Marner and another, unnamed officer arrived at Plaintiff's house.  [*Id.* at ¶ 13]  Plaintiff explained the situation, told the officers that he was supposed to have shoulder surgery in two days, and provided the officers with information about the surgery.  [*Id.*]  The officers left, and Plaintiff reentered his house.  [*Id.* at ¶ 14]  Upon reentering his home, Plaintiff confronted Mr. Powell about calling 911, which Mr. Powell denied.  [*Id.* at ¶ 15]  Plaintiff again asked Mr. Powell to leave, and Mr. Powell entered his room and closed the door.  [*Id.*]  A few minutes later, Mr. Powell exited his room carrying a gun and a bag.  [*Id.* at ¶ 16]  Plaintiff and Mr. Powell had a verbal exchange, and Mr. Powell left the home.  [*Id.*]

Plaintiff then received a call from an officer asking Plaintiff to exit his home.  [*Id.* at ¶ 17]  Plaintiff exited the home and Mr. Powell yelled at Plaintiff, "You're in trouble now!" [*Id.* at ¶ 18]  Within a few minutes, officers surrounded Plaintiff and began asking Plaintiff

---

[1] The facts are drawn from the allegations in Plaintiff's Amended Complaint [#5], which the Court accepts as true at this stage of the proceedings.  *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

who his roommate was.  [*Id.* at ¶ 19]  When Plaintiff replied that Mr. Powell was his roommate, an officer asked Plaintiff to turn around and face the garage.  [*Id.* at ¶¶ 19-20]  When Plaintiff asked whether he was being arrested and, if so, why, "[a]n officer from behind and to [Plaintiff's] left grabbed [Plaintiff] and slammed [him] to the ground on [his] concrete driveway."  [*Id.* at ¶¶ 20-21]  Plaintiff's head bounced off the concrete driveway, and the next thing Plaintiff remembers is waking up at the hospital.  [*Id.* at ¶¶ 22-23]

Plaintiff alleges that he did not threaten Officer Marner or show any tendency toward violence; nor did he commit any crime.  [*Id.* at ¶¶ 33-34, 41]  As such, the July 6, 2019 events "demonstrate[] a serious training issue with casual encounters at the Loveland Police Department and also demonstrate[] a problem with Officer Marner which the Loveland [P]olice [D]epartment should be aware of."  [*Id.* at ¶ 24]

According to Plaintiff, "Loveland City has a well-defined escalation and use of force procedure which its officers are instructed to follow in situations such as the one presented her[e]."[2]  [*Id.* at ¶ 48]  Plaintiff alleges that "in implementing this policy[,] [authorities] have created an environment that condones and encourages constitutional violations of the very type at issue her[e]."  [*Id.*]  Plaintiff further alleges that Defendants' "rank indifference to Plaintiff's rights was closely related to, or a direct result of, Loveland City's Escalation and Use of Force policy."  [*Id.* at ¶ 49]

Plaintiff, proceeding pro se, filed the instant action on July 6, 2021.  [#1]  Plaintiff's Amended Complaint asserts four causes of action:  (1) excessive force in violation of the Fourth Amendment, (2) illegal detention or arrest in violation of the Fourth Amendment,

---

[2] Despite alleging that this policy exists, the Amended Complaint fails to provide any details about the policy or to attach it as an exhibit.

(3) a municipal liability claim alleging an unconstitutional policy or practice of Loveland in violation of the Fourth Amendment, and (4) a municipal liability claim alleging a failure to train by Loveland in violation of the Fourth and Fourteenth Amendments.  [*See generally* #5]  On October 7, 2021, Defendants filed the instant Motion seeking to dismiss each claim.  [#21]  Plaintiff failed to file a timely response and, on November 4, 2021, this Court sua sponte extended Plaintiff's deadline to respond to the Motion to November 26, 2021.  [#28]  Despite the extension, Plaintiff did not file a response.  [*See* #38]

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Cassanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath or conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "The burden is on the plaintiff

to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id*. (quoting *Twombly*, 550 U.S. at 556).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  "The *Haines* rule applies to all proceedings involving a pro se litigant."  *Id*. at 1110 n.3.  The court, however, cannot be a pro se litigant's advocate.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## III.   ANALYSIS

In their Motion, Defendants seek dismissal of each of Plaintiff's claims.  [#21]  First, Defendants argue that Plaintiff's excessive force claim should be dismissed because Plaintiff has failed to identify the particular actions taken by each individual Defendant and, in any event, Defendants are entitled to qualified immunity on that claim.  [*Id*. at 3-5]  Next, Defendants argue that Plaintiff's unlawful seizure claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  [*Id*. at 5]  Finally, Defendants argue that Plaintiff has failed to adequately allege a policy or practice sufficient to impose municipal liability.  [*Id*. at 5-8]  The Court addresses Defendants' arguments below.

### A.  Excessive Force Claim

Defendants argue that Plaintiff's excessive force claim should be dismissed because Plaintiff has failed to identify the particular actions taken by each individual

Defendant.  [#21 at 3-4]  The Tenth Circuit has made clear that in a Section 1983 action that "include[s] the government agency and a number of government actors sued in their individual capacities," it is "particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in original); *see also Carrado v. Daimler AG*, No. 17-CV-3080-WJM-SKC, 2018 WL 4565562, at *3 (D. Colo. Sept. 24, 2018) ("Group pleading violates Rule 8 when a plaintiff fails to distinguish among multiple defendants, including on claims that could not apply to certain defendants.").

Here, Plaintiff's Amended Complaint fails this requirement.  Plaintiff brings claims against Loveland Police Department,  the City of Loveland, and five individual officers in both their individual and official capacities, but none of the allegations identifies which officers employed excessive force.  Indeed, although Plaintiff states that he was grabbed from behind and slammed to the ground by "[a]n officer," he does not identify *which* officer took this action.  [#5, ¶ 21]  And while Plaintiff alleges that "Officer Joshua Marner took what was a casual encounter with a member of the public and escalated it into a brawl that disturbed the peace," he does not identify any particular actions by Officer Marner that supposedly escalated the situation.[3]  [*Id.* at ¶ 24]  Accordingly, because Plaintiff has

_____

[3] Later in the Amended Complaint, Plaintiff states that "Officer Marner's malicious use of handcuffs on [Plaintiff] was unlawful."  [*Id.* at ¶ 35]  "In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight."  *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007).  Under Tenth Circuit law, "in a handcuffing case 'to recover on an excessive force claim, a plaintiff must show: (1) that the officers used

failed to allege who has done what to Plaintiff, his excessive force claim fails and Plaintiff's excessive force claim is DISMISSED WITHOUT PREJUDICE. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (holding that when the plaintiff is proceeding pro se, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend" (quotation omitted)); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### B.  Illegal Arrest Claim

Defendants argue that Plaintiff's illegal arrest claim is barred by *Heck v. Humphrey*. [#21 at 5]  In *Heck*, the Supreme Court held that a prisoner's claim for damages is not cognizable under Section 1983 if a judgment in the plaintiff's favor would imply the invalidity of his conviction or sentence, unless the conviction or sentence already has been overturned or otherwise invalidated.  512 U.S. at 486-87.  In other words, if the plaintiff's success in the Section 1983 suit for damages "would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the

---

greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional.'"  *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (quoting *Cortez*, 478 F.3d at 1129 n.25).  Applied here, Plaintiff has failed to allege any injury from the handcuffing or that Officer Marner was aware that the handcuffs were too tight.  Indeed, Plaintiff does not even identify the manner in which the handcuffs were used or what about their use was "unlawful."  As a result, this conclusory statement about Officer Marner's use of the handcuffs does not support an excessive force claim.

underlying conviction or sentence." *Muhammad v. Close,* 540 U.S. 749, 751 (2004) (per curiam).

Here, Plaintiff alleges that Defendant Marner "detained or arrested [Plaintiff] without probable cause" and that "Plaintiff had committed no crime." [#5 at ¶¶ 40-41] But, as a result of the interaction Plaintiff complains of, Plaintiff was arrested on charges of third degree assault and resisting arrest [#21-1] and a jury convicted him of those charges [#21-2].[4] Accordingly, a judgment in favor of Plaintiff on his unreasonable seizure claim— alleging that the officers lacked probable cause to arrest Plaintiff for third degree assault and resisting arrest—would necessarily imply the invalidity of Plaintiff's conviction on those charges. *Heck*, 512 U.S. 486 n. 6. Accordingly, Plaintiff's illegal arrest claim is barred by *Heck* and Claim Two is DISMISSED WITHOUT PREJUDICE with leave to refile should Plaintiff's criminal conviction be overturned.

### C. Municipal Liability Claim

Plaintiff has sued each of the Defendants in their official capacities,[5] and has also sued the Loveland Police Department ("LPD")[6] and the City of Loveland. [#5 at ¶¶ 8-9]

---

[4] In deciding a motion to dismiss, the Court may "take judicial notice of its own files and records, as well as facts which are a matter of public record," including criminal convictions. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *Trusdale v. Bell*, 85 F. App'x 691, 693 (10th Cir. 2003) (approving district court's decision to take judicial notice of Plaintiff's criminal convictions in Section 1983 case and finding those convictions barred Plaintiff's claims under *Heck*).

[5] "Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent," and thus courts apply the same standards of liability to municipalities as to official capacity claims against municipal officials. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).

[6] The LPD is not a proper suable entity. "Title 42 U.S.C. § 1983 provides a cause of action against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any

"[M]unicipalities and municipal entities . . . are not liable under 42 U.S.C. § 1983 solely because their employees inflict injury on a plaintiff." *Fofana v. Jefferson Cty. Sheriff's*, No. 11-cv-00132-BNB, 2011 WL 780965, at *2 (D. Colo. Feb. 28, 2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). Instead, to establish a municipality's liability, the plaintiff must demonstrate that a municipal policy or custom directly caused his injury. *Id.*

"A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). After identifying an official policy or custom, the plaintiff must demonstrate causation by showing that the policy or custom "is the moving force behind the injury

---

rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). Accordingly, a plaintiff may only bring suit against a "person" within the meaning of § 1983. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The LPD is not a suable person under § 1983 because it does not "exist as a separate legal entity," independent of the City of Loveland. *Stump v. Gates*, 777 F. Supp. 808, 815 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993); *see also Farrand v. Douglas Cnty. Sheriff Dep't*, No. 09-CV-01266-BNB, 2009 WL 3698412, at *1 (D. Colo. Nov. 4, 2009) (finding plaintiff could "not sue Defendant Douglas County Sheriff's Department because the sheriff's department is not a separate entity from Douglas County and, therefore, is not a person under 42 U.S.C. § 1983"); *Lancaster v. Windsor Police Sgt. Straightline*, No. 15-cv-02852-GPG, 2016 WL 852863, at *3 (D. Colo. Mar. 4, 2016) ("Plaintiff may not sue the Weld County Sheriff and Weld County Jail because these entities are not 'persons' subject to suit under 42 U.S.C. § 1983."). This conclusion is consistent with Colorado state law. "The law of the state in which the district court sits governs the capacity of a governmental entity to sue or to be sued." *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001) (citing Fed. R. Civ. P. 17(b)). "Under Colorado law[,] municipalities and counties, not their various subsidiary departments"—such as the LPD—"exist as 'bodies corporate and politic' empowered to 'sue and be sued.'" *Stump*, 777 F. Supp. at 816 (citing Colo. Rev. Stat. §§ 30-11-101(1)(a), 31-15-101(1)(a)-(b)); *see also Lewis v. Denver Fire Dep't*, No. 09-cv-0004-RBJ-MJW, 2013 WL 24279, at *5 (D. Colo. Jan. 2, 2013) (same).

alleged." *Cacioppo v. Town of Vail*, 528 F. App'x 929, 931 (10th Cir. 2013) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (same).  Finally, the plaintiff must demonstrate "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."  *Cacioppo*, 528 F. App'x at 931 (quoting *Schneider*, 717 F.3d at 769).

Here, the allegations supporting Plaintiff's municipal liability claims are entirely conclusory and fail to identify any specific policy, custom, or training failure. [*See* #5, ¶¶ 48 ("Loveland City has a well-defined escalation and use of force procedure [which] ha[s] created an environment that condones and encourages constitutional violations of the very type at issue her[e]."); 49 ("[Individual Defendants'] rank indifference to Plaintiff's rights were closely related to, or a direct result of, Loveland City's longstanding Escalation and Use of Force policy."); 55 ("Defendant Joshua Marner's actions toward mere commuters who are unimposing members of the public shows either malicious intent on the part of Officer Marner or a lack of training on the part of Officer Marner or a lack of training on the part of Loveland City and the Loveland Police Department."); 56 ("Loveland City and the Loveland Police Department failed to adequately train their employees in the crucial area of policing noted above, and these failures directly caused the excessive force described here and the damages resulting therefrom.")]

These conclusory statements and "formulaic recitation[s]" of the elements of a municipal liability claim are insufficient to state a claim for relief. *See Twombly*, 550 U.S. at 555; *see also Garcia v. Adams Cnty.*, No. 16-cv-01977-PAB-NYW, 2017 WL 4251931,

at *3-4 (D. Colo. Sept. 25, 2017) (dismissing complaint where plaintiff failed to identify specific policies or failures to train and supervise); *Baumann v. O'Neil*, No. 14-cv-02751-CMA-NYW, 2015 WL 5121800, at *5 (D. Colo. Aug. 10, 2015) (finding "Plaintiff['s] attempts to pursue his municipal liability claim based on nothing more than naked assertions that some unidentified aspects of the City's training, supervision, and/or discipline regimes were deficient and a moving force behind the alleged wrongful arrest," were insufficient to state a municipal liability claim); *White v. City & Cnty. of Denver*, 13-cv-01761-CMA-MJW, 2014 WL 3953135, at *7 (D. Colo. Aug. 12, 2014) ("Plaintiff has not alleged specifics regarding why [defendants'] supervision was inadequate or explained how the incident described in the Second Amended Complaint could have been avoided by better supervision or training."); *Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *4 (D. Colo. May 18, 2011) (dismissing municipal liability claims where the failure to train or supervise allegations were "conclusory in nature and devoid of any supporting factual allegations that would demonstrate that the City or County were deliberate[ly] indifferent to the need for more or better training and supervision").

This deficiency is especially problematic to the extent Plaintiff attempts to rely upon a failure to train theory of municipal liability.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," because "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be

properly thought of as a city 'policy or custom.'"  *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).  Deliberate indifference is a "stringent standard," requiring the plaintiff to demonstrate that "the City had 'actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation' and 'consciously or deliberately [chose] to disregard the risk of harm.'"  *Murphy v. City of Tulsa*, 950 F.3d 641, 651 (10th Cir. 2019) (quoting *Barney*, 143 F.3d at 1307) (alterations in original).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quotation omitted).  "If a [training] program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for."  *Bd. of Cnty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997).  The decisionmakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'— necessary to trigger municipal liability."  *Id.*

> [T]he existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the moving force behind the plaintiff's injury.

*Id.* at 407-08 (quotation omitted).  "Deliberate indifference 'may be found absent a pattern of unconstitutional behavior' only in 'a narrow range of circumstances' where 'a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.'"  *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Barney*, 143 F.3d at 1307-08).

Applied here, the Amended Complaint neither alleges a pattern of tortious conduct by inadequately trained employees nor presents facts that would allow the Court to conclude that this case falls within the narrow range of circumstances where a violation of federal rights is highly predictable or a plainly obvious consequence.  Indeed, the Amended Complaint does not identify *any* past instances of unconstitutional conduct by Defendants, nor does it identify any form of training—inadequate or otherwise.  As a result, Plaintiff has failed to adequately allege a municipal liability claim.  Accordingly, Defendant's Motion to Dismiss is GRANTED with respect to Plaintiff's Third and Fourth claims and those claims are DISMISSED WITHOUT PREJUDICE.  *See Oxendine*, 241 F.3d at 1275; *Reynoldson*, 907 F.2d at 127.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion") [#21] is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.  Plaintiff may file a Second Amended Complaint no later than June 6, 2022.  Should Plaintiff fail to file a Second Amended Complaint by that date, Judgment will enter in favor of Defendants.

DATED:  May 19, 2022                         BY THE COURT:

                                             s/Scott T. Varholak
                                             United Stated Magistrate Judge